## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DARIA CRAWFORD and AHMED ABDELHAMID, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. Action No. 1:20-cv-01539-CRC Civ. Action. No. 1:20-cv-01886-CRC |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| THE PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE, | ) ) ) | |
| Defendant. | ) ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

I.    Plaintiffs' Claim For Breach Of Contract Should Be Dismissed ......................2

      A.    Plaintiffs Fail To Identify A Binding Obligation...............................2

      B.    Plaintiffs Allege No Breach Of Any Contractual Terms .......................6

      C.    Plaintiffs Cannot Avoid The Rule Against Judicial Interference ...........11

II.    Plaintiffs' Other Causes Of Action Also Should Be Dismissed .....................16

      A.    Plaintiffs Fail To State A Claim For Unjust Enrichment......................16

      B.    Plaintiffs Fail To State A Claim For Money Had And Received .........19

      C.    Plaintiffs Fail To State A Claim For Conversion.................................19

CONCLUSION.............................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*,
    885 F. Supp. 2d 156 (D.D.C. 2012) ...................................................................18

*Chong v. Ne. Univ.*,
    2020 WL 5847626 (D. Mass. Oct. 1, 2020) ................................................4, 9, 16

*Davis v. Joseph J. Magnolia, Inc.*,
    640 F. Supp. 2d 38 (D.D.C. 2009) ...................................................................10

*Edwards v. Ocwen Loan Servicing, LLC*,
    24 F. Supp. 3d 21 (D.D.C. 2014) .....................................................................19

*El-Shifa Pharm. Indus. Co. v. U.S.*,
    559 F.3d 578 (D.C. Cir. 2009) .........................................................................12

*Giles v. Howard Univ.*,
    428 F. Supp. 603 (D.D.C. 1977) ........................................................................2

*Itek Corp. v. First Nat'l Bank of Boston*,
    566 F. Supp. 1210 (D. Mass. 1983) ...................................................................5

*King v. Triser Salons, LLC*,
    815 F. Supp. 2d 328 (D.D.C. 2011) .................................................................18

*Krebs v. Charlotte Sch. of Law, LLC*,
    2017 WL 3880667 (W.D.N.C. Sept. 5, 2017) ...................................................17

*Lykens v. U.S.*,
    527 F. Supp. 2d 18 (D.D.C. 2007) ...................................................................12

*McNamara v. Picken*,
    950 F. Supp. 2d 193 (D.D.C. 2013) .................................................................20

*Mero v. City Segway Tours of Washington, DC, LLC*,
    962 F. Supp. 2d 92 (D.D.C. 2013) ...................................................................10

*Mosby-Nickens v. Howard Univ.*,
    864 F. Supp. 2d 93 (D.D.C. 2012) .....................................................................2

*Regents of University of Michigan v. Ewing*,
    474 U.S. 214 (1985) ........................................................................................14

*Roe v. Loyola Univ. New Orleans*,
    2007 WL 4219174 (E.D. La. Nov. 26, 2007) ........................................................17

*Roebling v. Dillon*,
    288 F.2d 386 (D.C. Cir. 1961) ..............................................................................18

*Rosado v. Barry University Inc.*,
    2020 WL 6438684 (S.D. Fla. Oct. 30, 2020)..........................................................16

*Ross v. Creighton Univ.*,
    957 F.2d 410 (7th Cir. 1992) ................................................................................14

*Rwanda v. Rwanda Working Group*,
    227 F. Supp. 2d 45 (D.D.C. 2002).................................................................19, 20

*Shatteen v. Omni Hotels Mgmt. Corp.*,
    113 F. Supp. 3d 176 (D.D.C. 2015).......................................................................10

*Superlease Rent-A-Car, Inc. v. Budget Rent-A-Car of Md.*,
    1989 WL 39393 (D.D.C. 1989) ............................................................................10

**State Cases**

*Alden v. Georgetown Univ.*,
    734 A.2d 1103 (D.C. 1999) ............................................................................11, 12

*Allen v. Mich. St. Univ.*,
    2020 Mich. Ct. Cl. LEXIS 6 (Mich. Ct. Cl. Oct. 1, 2020).......................................4

*In re Antioch Univ.*,
    418 A.2d 105 (D.C. 1980) ....................................................................................12

*Basch v. George Washington Univ.*,
    370 A.2d 1364 (D.C. 1977) .......................................................................... *passim*

*Brantley v. Dist. of Columbia*,
    640 A.2d 181 (D.C. 1994) ..............................................................................12, 13

*Choharis v. State Farm Fire & Cas. Co.*,
    961 A.2d 1080 (D.C. 2008) ..................................................................................20

*Cross v. Univ. of Toledo*,
    2020 WL 4726814 (Ohio Ct. Cl. July 8, 2020) ......................................................14

*Dalke v. Cent. Mich. Univ.*,
    2020 Mich. Ct. Cl. LEXIS 3 (Mich. Ct. Cl. Sept. 25, 2020) ...................................4

*Eisenberg v. Eisenberg*,
    357 A.2d 396 (D.C. 1976) ....................................................................................10

*Garland v. W. Mich. Univ.*,
    2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020) ...................................................14

*Horrigan v. E. Mich. Univ.*,
    2020 Mich. Ct. Cl. LEXIS 4 (Mich. Ct. Cl. Sept. 24, 2020) ...........................................4, 9, 16

*Howard Univ. v. Best*,
    484 A.2d 958 (D.C. 1984) ...............................................................................................................5

*McDermott v. The Ohio St. Univ.*,
    2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020) ...................................................................14

*Mellowitz v. Ball St. Univ.*,
    2020 Ind. Super. LEXIS 854 (Ind. Super. Ct. Aug. 14, 2020)................................................15

*Milanov v. Univ. of Mich.*,
    2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020)....................................................14

*Moss v. Wayne State Univ.*,
    2009 WL 4344193 (Mich. Ct. App. Dec. 1, 2009) ..................................................................17

*Paymon v. Wayne St. Univ.*,
    2020 Mich. Ct. Cl. LEXIS 10 (Mich. Ct. Cl. Oct. 21, 2020) ...................................................4

*Paynter v. New York Univ.*,
    319 N.Y.S.2d 893 (N.Y. App. Div. 1971) ..............................................................................12

*Smith v. The Ohio St. Univ.*,
    No. 2020-00321JD (Ohio Ct. Cl. Sept. 9, 2020)......................................................................14

*Stenger v. Ferris St. Univ.*,
    2020 Mich. Ct. Cl. LEXIS 5 (Mich. Ct. Cl. Oct. 1, 2020) ........................................................4

*Waitt v. Kent St. Univ.*,
    2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020) ..................................................................14

*Zwiker v. Lake Superior St. Univ.*,
    2020 Mich. Ct. Cl. LEXIS 2 (Mich. Ct. Cl. Aug. 31, 2020)...........................................4, 9, 16

## INTRODUCTION

In March, COVID-19 cases were surging around the country and in Washington, D.C. The mayor had declared a state of emergency, and the Department of Health was urging citizens to cancel nonessential mass gatherings.  In response, Georgetown University did what was necessary to protect its students' health—indeed, their lives—and moved classes online.  That decision required and received the most careful consideration, and implementing it demanded extraordinary efforts, dedication, and commitment to Georgetown's students by the University's faculty, administration, and staff.  But, as Georgetown reassured its students at the time, the University had confronted challenging moments before and was confident that its community would carry on with the care for the common good that has defined Georgetown throughout its history.

Soon after the semester ended, two students filed this lawsuit.  They claim that the extraordinary health- and life-saving measures that Georgetown took to carry out its educational mission despite a pandemic breached its contract with its students.  Although both Plaintiffs and Georgetown had expected the Spring 2020 semester to take place in person, Plaintiffs allege that Georgetown *contractually promised* an in-person semester come hell or high water—and breached that promise when it moved classes online rather than expose students to harm.  But Georgetown had no contractual obligation to put students at risk by continuing to provide in-person instruction.  Georgetown would never have made—and did not make—that promise. Neither the complaint nor Plaintiffs' opposition brief supports any such contention. Georgetown's decision to move classes online was careful, difficult, and *right*, for its students and the rest of its community.  And it was not a breach of contract or a violation of any duty Georgetown owed its students.

Today, COVID-19 cases are again surging around the country and in Washington, D.C. In the D.C. metro area, cases are at all-time highs. Local leaders are considering greater restrictions, and public health experts warn that risks will increase as cold weather pushes more activities indoors. But at Georgetown, the two fundamental commitments that guided the University in March—safeguarding the health and safety of the campus community and maintaining the continuity of academic programs—are undiminished. Classes continue online, and students continue their studies, safely. Georgetown did not enter into any contract provision that would undermine those two fundamental commitments or require the University to put its students in harm's way. This lawsuit should be dismissed.

## ARGUMENT

## I. PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED

### A. Plaintiffs Fail To Identify A Binding Obligation

Under District of Columbia law, students suing a university for breach of contract must identify an obligation (1) "definite in its terms" (2) that makes the university's performance "reasonably certain" and (3) that the university intended as binding. *Basch v. George Washington Univ.*, 370 A.2d 1364, 1367 (D.C. 1977); *accord Mosby-Nickens v. Howard Univ.*, 864 F. Supp. 2d 93, 99 (D.D.C. 2012).[1] Universities and students exchange a "great deal of

---

[1]     Plaintiffs contend that "the standard is that of reasonable expectation what meaning the party making the manifestation, the University, should reasonably expect the other party to give it." Opp. 7 (quoting *Giles v. Howard Univ.*, 428 F. Supp. 603, 605 (D.D.C. 1977)). Plaintiffs miss the key point: Only where the University *has made a manifestation*—that is, a promise— may the parties' reasonable expectations help interpret the terms of that manifestation. An expectancy not based on a promise does not suffice. As discussed more below, "[i]t is well established that mere expectancy of a continued course of conduct is not enough." *Basch*, 370 A.2d at 1368 (quoting *Tauber v. Jacobson*, 293 A.2d 861, 867 (D.C. 1972)). Thus, in the case that Plaintiffs rely on, the contract claim failed because "the plaintiff has failed to adduce any evidence of a violated contract right." *Giles*, 428 F. Supp. at 606.

information," but only intentionally definite and certain promises become contract terms.  *Basch*, 370 A.2d at 1367.  Plaintiffs themselves acknowledge that a university's intent to be bound is an "overriding consideration" in whether a contractual obligation exists.  Opp. 8.

Plaintiffs fail to allege that Georgetown made an enforceable promise to provide in-person instruction no matter the circumstances.  The complaint cites statements in documents and other materials *about* on-campus instruction.  But none goes so far as to *promise* in-person instruction.  Georgetown's motion to dismiss showed that the materials cited by Plaintiffs contain no obligation that is "definite in its terms" or that Georgetown plausibly intended to be binding with respect to in-person instruction.  MTD 8-10.  Plaintiffs now argue that "[t]he Court need not consider these arguments separately" and may instead rely on the impression made by these statements taken in "the aggregate."  Opp. 9.  But, as Georgetown has explained, that contract-by-mosaic approach simply does not work here.  Plaintiffs cite statements that are individually too indefinite, that call for uncertain performance, or that the University does not intend to be binding.  These statements cannot, taken together, crystallize into an obligation that satisfies the requirements its component parts individually fail to meet.  MTD 10.

In their search for an enforceable contractual obligation, Plaintiffs focus on three things.  *First*, Plaintiffs address statements in various marketing materials and in Georgetown's course listings.  *See* Opp. 8-9.  These statements show that Georgetown expected to offer on-campus instruction in the 2019-2020 school year, before the pandemic.  No doubt Plaintiffs had the same expectation.  But as Georgetown has explained (MTD 6-8), language that merely "expressed an expectancy" does not create a contractual obligation.  *Basch*, 370 A.2d at 1368.  And no statement that Plaintiffs cite—in marketing materials or elsewhere—*promised* in-person learning no matter the circumstances (or demonstrates that Georgetown intended to be bound to such a

statement).  A promise is the irreducible minimum of Plaintiffs' case, and they do not point to anything to show such a promise was made.  Several courts addressing similar claims have dismissed them because the relevant documents—for instance, a financial responsibility agreement, marketing brochures, and course catalogs—did not make any *promise* of exclusively in-person instruction (let alone one linked to tuition payments).  *See Chong v. Ne. Univ.*, 2020 WL 5847626, at *1, 3 (D. Mass. Oct. 1, 2020); *Zwiker v. Lake Superior St. Univ.*, 2020 Mich. Ct. Cl. LEXIS 2, at *10-13 (Mich. Ct. Cl. Aug. 31, 2020); *Horrigan v. E. Mich. Univ.*, 2020 Mich. Ct. Cl. LEXIS 4, at *8-10 (Mich. Ct. Cl. Sept. 24, 2020); *Dalke v. Cent. Mich. Univ.*, 2020 Mich. Ct. Cl. LEXIS 3, at *7-10 (Mich. Ct. Cl. Sept. 25, 2020); *Stenger v. Ferris St. Univ.*, 2020 Mich. Ct. Cl. LEXIS 5, at *7-9 (Mich. Ct. Cl. Oct. 1, 2020); *Allen v. Mich. St. Univ.*, 2020 Mich. Ct. Cl. LEXIS 6, at *6-9 (Mich. Ct. Cl. Oct. 1, 2020); *Paymon v. Wayne St. Univ.*, 2020 Mich. Ct. Cl. LEXIS 10, at *9-11 (Mich. Ct. Cl. Oct. 21, 2020).  This Court should do the same.

*Second*, Plaintiffs make a cursory attempt to suggest that Georgetown promises in-person services by charging a "Student Activity Fee."  Opp. 9.  But, as Georgetown explained in its opening brief (MTD 9), a fee that supports "various activities … *including*" things as amorphous as "recreational opportunities" and "other co-curricular programs," Compl. ¶¶ 10, 21 (emphasis added); *see also* Opp. 9, does not "render[] … reasonably certain" the services provided in exchange for that fee, *Basch*, 370 A.2d at 1367.  Plaintiffs make no attempt to identify any "reasonably certain" services the fee purportedly obligated Georgetown to provide.  Moreover, one court hearing a similar case against another university dismissed claims seeking fee refunds because the descriptions of those fees demonstrated that they are charged "to 'support' certain facilities" rather than in direct exchange for access to specific facilities or services.  *Chong*, 2020

WL 5847626, at *4.  It is so too here, where the fee "fund[s] various activities" instead of being

charged in direct exchange for those activities.

*Third*, Plaintiffs rely upon Georgetown's history of in-person instruction, including the

instruction delivered to them before the pandemic.  Opp. 8-9.  But "[i]t is well established that

mere expectancy of a continued course of conduct is not enough" to create a contractual

obligation.  *Basch*, 370 A.2d at 1368 (quoting *Tauber v. Jacobson*, 293 A.2d 861, 867 (D.C.

1972)).  And while Georgetown's custom may have led Plaintiffs to expect in-person

instruction—again, an expectation Georgetown shared—it does not follow that Georgetown

intended to be contractually bound to provide its customary mode of instruction no matter the

circumstances.  That Georgetown has provided in-person instruction in ordinary times says

nothing about its intent when in-person instruction would endanger the health and safety of the

University community, as during the pandemic.[2]  *See Howard Univ. v. Best*, 484 A.2d 958, 974

n.14 (D.C. 1984) (evidence of custom or usage is admissible to show "all those general *and*

*unvarying* incidents which a uniform usage annexes" (quoting Restatement (First) of Contracts

§ 246 (1932)) (emphasis added)); *Itek Corp. v. First Nat'l Bank of Boston*, 566 F. Supp. 1210,

1216 (D. Mass. 1983) (where party to a contract had agreed to litigate disputes in courts of Iran

prior to 1977 revolution as a matter of custom, holding that "[w]hat was contractually

'customary' and 'necessary' in 1977 does not, in the face of dramatically changed circumstances,

exert binding force on the parties and this Court").  Thus, Georgetown's previous customary

---

[2]      While Plaintiffs discuss the defense of impossibility of performance, *see* Opp. 28, the
issue at this stage is not whether impossibility excuses Georgetown from satisfying an existing
obligation.  The issue is whether Plaintiffs plausibly allege facts showing that Georgetown
intended for its customary practice to be binding in the first place, such that it is plausibly in
breach of that obligation when continuing that practice is not feasible.  Plaintiffs have alleged
nothing that plausibly suggests that Georgetown had this intent, as is necessary for their claims to
proceed.

practice cannot create a definite, unalterable contractual obligation to continue that practice, especially one enforceable in the least customary times.

In short, Plaintiffs mostly ignore the specific documents on which their complaint rests, say nothing about the University's intent to be bound, and allege nowhere Georgetown promised to provide in-person instruction and services no matter the circumstances.  Plaintiffs' contract claims must be dismissed.

**B.      Plaintiffs Allege No Breach Of Any Contractual Terms**

Plaintiffs also show no breach of any of the actual terms of Georgetown's agreements with its students.

*First*, as Georgetown previously explained (MTD 11), tuition rates are linked to full- or part-time status and to credit hours.  Plaintiffs protest that "the fact that tuition corresponds to the *number* of credit hours does not mean that it does not *also* correspond to other promises made by the University, including in-person and on-campus educational services."  Opp. 11.  But, as discussed above, Plaintiffs point to nothing specific showing that such an additional promise was made—and certainly nothing that links such a promise directly to tuition rates.  To the contrary, the relevant documents discuss exactly what factors are deemed relevant to the setting of tuition rates:  "[T]he true costs of delivering the education we value—including available sources of financial aid, projected costs for competitive faculty and staff salaries, student services, compliance services, [and] technology updates."  MTD 11-12.  This says nothing at all about method of instruction.

Plaintiffs concoct "a simple and obvious explanation" for the method of instruction not being listed as a factor in calculating tuition—that the provision of in-person instruction was so fundamentally obvious that the parties did not even think it merited mention.  Opp. 12.  Nothing in Georgetown's documents actually establishes a promise of in-person instruction, which is a

necessary premise of Plaintiffs' explanation.  *Supra* at 2-6.  More to the point, Plaintiffs'

unsupported assertion that "Georgetown … did not contemplate the possibility of *anything but*

in-person and on-campus education" is unsupported and wrong.  Georgetown's Instructional

Continuity Policy—published in 2014, years before the pandemic—provides that "[i]nstructional

activities will be maintained during university closures" and that "[f]aculty members should

prepare for the possibility of an interruption of face-to-face instruction by establishing a policy

within the course syllabus to maintain instructional continuity in the face of an unforeseen

disruption."  Georgetown Univ.*, Instructional Continuity* (July 2, 2014) (attached as Exhibit A).[3]

This policy makes clear that, counter to Plaintiffs' contention, Georgetown *did* contemplate the

kinds of alterations to instructional method underlying Plaintiffs' claims.  But tellingly,

Georgetown still did not include anything related to the method of instruction in its description

of factors relevant to tuition rates.  And the factors that Georgetown lists as elements of the "true

costs of delivering the education we value"—things like financial aid and faculty salaries—*are*

as unavoidably obvious as Plaintiffs contend the provision of in-person instruction is, but

Georgetown still identified them as elements of tuition rates.[4]

    *Second*, both the Undergraduate Bulletin and Law Center Handbook include reservations

of rights granting Georgetown discretion to shape its instruction and policies and to set rates for

tuition and fees.  MTD 12-13; *see also* Dkt. 19-1 at 2 ("Georgetown University reserves the right

---

[3]     Georgetown offers several degree programs (though not Plaintiffs' programs) online, *see, e.g.*, Georgetown Univ. School of Continuing Studies, *Online Programs*, *available at* https://scsonline.georgetown.edu/programs; Georgetown Univ. McDonough School of Business, *Online MS in Finance Overview*, *available at* https://msbonline.georgetown.edu/online-masters-in-finance, belying Plaintiffs' unsupported contention that the University could not contemplate more than a single method of instruction.

[4]     Contrary to what Plaintiffs suggest (Opp. 14), Georgetown never said that the tuition refund policies addressing student withdrawal are controlling here.  Rather, Georgetown highlighted these policies as "instructive."  MTD 12 n.15.

to change without notice the Undergraduate Bulletin, including all rules, policies, fees, curricula, courses, graduation requirements, or other matters contained therein."); *id.* at 21 ("Georgetown University specifically reserves the right to increase tuition and other fees without prior notice should conditions be such that an increase is warranted."); Dkt. 19-2 at iii ("The Law Center reserves the right to change academic requirements and policies."); *id.* at 140 ("Tuition and fees are subject to change without prior notice.").

Plaintiffs call these provisions "red herrings" because "[t]his case involves changes made during the middle of a semester, after the contract had already been formed." Opp. 12. But nothing about these reservations limits them to changes made between semesters. To the contrary, the Undergraduate Bulletin itself makes clear that it is "updated annually *and at other times as appropriate*," Dkt. 19-1 at 2 (emphasis added), and the Law Center Handbook also makes clear that changes can be made "after the publication of th[e] Handbook," Dkt. 19-2 at iii. This also belies Plaintiffs' efforts to recast this issue as one about contract modification. *See* Opp. 13-14. The question is not whether there was mutual assent to the changes to the mode of instruction as a result of the pandemic. Rather, the question is whether there was mutual assent to the reservations of rights in the Bulletin and Handbook that granted Georgetown the discretion to make such changes going forward. Since the reservations appeared in the Bulletin and Handbook for the entire school year, Plaintiffs cannot dispute that such mutual assent existed.[5]

---

[5]   Plaintiffs also suggest that "[a]ny ambiguity in a reservation of rights must be resolved in favor of Plaintiffs, not given the 'implication' urged by the drafter," Opp. 16, but they identify no ambiguity. Nor can they, because the reservations of rights are clear: Georgetown broadly reserves the right to change "the Undergraduate Bulletin, including all rules, policies, fees, curricula, courses, graduation requirements, or other matters contained therein," Dkt. 19-1 at 2, and it is the Bulletin that addresses Plaintiffs' tuition and fee payments. To the extent Plaintiffs contend that the reservations must identify what is subject to change with "specificity" in order to be effective, Opp. 16, they offer no support for that contention.

*Third*, Plaintiffs' discussion of the language in the Bulletin and Handbook conditioning responsibility for payment on the act of registration for classes misunderstands the point of Georgetown's arguments.  The point of Georgetown's argument is not that Georgetown could take Plaintiffs' money upon the act of course registration and then provide them with absolutely nothing, as Plaintiffs seem to suggest.  Opp. 14-15.  Rather, the point is that the Bulletin and Handbook in no way condition students' acceptance of responsibility for payment of tuition and fees on Georgetown's provision of any particular method of instruction.  MTD 13 ("These statements unequivocally require students to pay full tuition, without regard to the manner of instruction.").  Indeed, since Georgetown filed its motion to dismiss, several other courts have granted motions to dismiss premised on student financial responsibility agreements functionally identical to the language at issue here.  *See, e.g.*, *Chong*, 2020 WL 5847626, at *1, 3; *Zwiker*, 2020 Mich. Ct. Cl. LEXIS 2, at *10-13; *Horrigan*, 2020 Mich. Ct. Cl. LEXIS 4, at *8-10.

Failing to rebut Georgetown's arguments that language in the Bulletin, Handbook, and related documents forecloses the relief Plaintiffs seek, Plaintiffs instead argue that the provisions in question either are not contractual or render Georgetown's entire agreement with its students illusory.  Both points are wrong.  First, Plaintiffs posit that provisions that hurt their position— like the language conditioning responsibility for payment on registration for classes—are not part of the contract at all because they are not individually and separately supported by consideration.  Opp. 14-15.  But Plaintiffs offer no support for their suggestion that each individual line of an agreement must be separately supported by independent consideration.  The payment responsibility provisions, like all other parts of the Bulletin and Handbook that spell out contractual terms, are part of the university-student contract.  Both parties to this contract gave

due consideration—the students paid tuition and fees, and the University provided instruction. *Cf. Mero v. City Segway Tours of Washington, DC, LLC*, 962 F. Supp. 2d 92, 103 (D.D.C. 2013).

Plaintiffs further contend that the reservations of rights render the entire agreement between Georgetown and its students illusory, but this misstates the law.  An agreement is illusory only where it "gives consideration that is so insignificant that an actual obligation cannot be imposed," *Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 181 (D.D.C. 2015), or where "performance of [a] promise is optional," *Davis v. Joseph J. Magnolia, Inc.*, 640 F. Supp. 2d 38, 45 (D.D.C. 2009).  Plaintiffs do not and cannot contend that they received no consideration from Georgetown in exchange for their tuition and fees:  They both received credit for their Spring 2020 courses and made progress towards (or, in the case of Plaintiff Crawford, completed and received) their degrees.  Further, "[w]hen a condition requires the satisfaction or approval of the obligor"—as the reservations of rights necessarily do, given that they vest discretion in Georgetown as the obligor—"then, *under any interpretation*, the obligor's exercise of judgment must be [in] accordance with the implied duty of good faith and fair dealing." *Superlease Rent-A-Car, Inc. v. Budget Rent-A-Car of Md.*, 1989 WL 39393, at *5 (D.D.C. 1989) (emphasis added).  This duty "constitutes consideration on the part of the obligor, and saves the agreement from being merely illusory."  *Id.*; *see also Eisenberg v. Eisenberg*, 357 A.2d 396, 400 (D.C. 1976) ("In construing an approval provision such as this one, a court will impose on the person whose approval is necessary a duty to act reasonably and in good faith.").[6]  Given the

---

[6]     Plaintiffs say that "a party to a contract may contractually reserve the right to modify certain specified terms upon the occurrence of certain specified factors."  Opp. 15-16.  As with their suggestion that a reservation must have "specificity" to be effective, however, they offer no support for their suggestion that this is the *only* circumstance in which an obligor may reserve the right to change terms of an agreement without rendering the contract illusory.  To the contrary, the D.C. law Georgetown cites speaks broadly and says that an implied duty of good faith serves as consideration "under any interpretation" of such reservations.  *Superlease*, 1989 WL 39393, at

clear dangers of the COVID-19 pandemic and the government stay-at-home orders mandating the closure of educational facilities, there is no plausible allegation that Georgetown did not act in good faith when exercising its discretion to shift to remote coursework and services.

**C.      Plaintiffs Cannot Avoid The Rule Against Judicial Interference**

Plaintiffs' failure to plead an enforceable obligation to provide in-person instruction no matter the circumstances—and to allege breach of the actual terms of the Undergraduate Bulletin and Law Center Handbook—is enough to defeat their contract claims.  The doctrine placing academic decisions outside courts' purview underscores why their claims are impermissible.

In arguing this doctrine does not apply, Plaintiffs go to great lengths to establish a bright line demarcating types of cases where deference is or is not appropriate, Opp. 17-18, but this division is artificial.  As D.C. courts have made clear, the touchstone of deference is whether the claim at issue is "'readily adapted to the procedural tools of judicial or administrative decision making.'"  *Alden v. Georgetown Univ.*,734 A.2d 1103, 1109 (D.C. 1999) (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978)).  This is a *practical* question that varies from case to case depending on the inquiries required to resolve a plaintiff's claims.  Here, Plaintiffs' claims cannot be resolved without the Court addressing issues that are *not* adapted to the decisionmaking tools at its disposal, like how to provide a university education during a pandemic, *see* MTD 14-17.

This is not a case where Georgetown "did not provide" services at all.  Opp. 23. Georgetown provided the best education that *could* be provided under the circumstances, based on its professional judgment—and an education that it judged worthy of academic credit.  Under

---

*5.  Plaintiffs themselves acknowledge New York case law indicating that contracts feature an "implied in law condition of good faith," albeit in a different context than the present argument. Opp. 18 (citing *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652, 659 (1980)).

D.C. law, that judgment merits deference.  *Alden*, 734 A.2d at 1109; *see also In re Antioch Univ.*, 418 A.2d 105, 112-13 (D.C. 1980) (holding that the "development and continuation of the university's courses of study should reside within the sound discretion of the university[]" even though plaintiffs can seek damages for breach of contract for objective harms such as "lack of accreditation, professional certification problems, delay, etc.").  Indeed, courts have deferred to a university's judgment that cancelling the remainder of a semester due to a crisis was in its students' best educational interests.  *See Paynter v. New York Univ.*, 319 N.Y.S.2d 893 (N.Y. App. Div. 1971).[7]  Nor does the motion-to-dismiss standard change things, as Plaintiffs suggest. *See* Opp. 24.  While the Court presumes *factual* allegations to be true, *see, e.g.*, *Lykens v. U.S.*, 527 F. Supp. 2d 18, 21 (D.D.C. 2007), federal courts will not permit "artful pleading that recasts the terms of a dispute to make it one properly reviewed by courts," *El-Shifa Pharm. Indus. Co. v. U.S.*, 559 F.3d 578, 585 n.2 (D.C. Cir. 2009), *vacated and subsequently affirmed en banc*, 607 F.3d 836, 843 (D.C. Cir. 2010).  The Court thus looks behind Plaintiffs' preferred legal framing to determine whether in fact resolving their claims requires answering questions that the law places outside the Court's purview.

---

[7]     Plaintiffs contend that *Paynter* supports *their* position because a California state court decision interpreting *Paynter* states that whether a given change is insubstantial (such that deference is due) or substantial (such that a claim may lie) must be determined at trial, not on the pleadings.  Opp. 26 (citing *Zumbrun v. Univ. of S. Cal.*, 101 Cal. Rptr. 499 (Cal. Ct. App. 1972)).  But allowing decisions about the applicability of deference to proceed all the way through trial and to be put to the factfinder would eviscerate the public policy considerations that D.C. courts have said support the doctrine of noninterference.  Were such claims to go all the way through trial, courts would still need to establish nebulous standards of care and lay out instructions for how to evaluate the cause and nature of damages.  *Brantley v. Dist. of Columbia*, 640 A.2d 181, 184 (D.C. 1994).  Further, allowing these claims to proceed to trial could invite a flood of litigation seeking to sort out minor and major changes to academic programs.  *Id.*  The better view under D.C. law is that deciding what educational decisions are major or minor is exactly the kind of line-drawing that courts *avoid*, not just postpone for another day.

Plaintiffs' requested relief—both in their complaint and in their brief—proves the point. In their complaint, Plaintiffs make clear that they are seeking the return of "the pro-rated portion of any Spring Semester 2020 tuition and fees for educational services not provided *or diminished in value* since Georgetown shut down." Compl. ¶ 59; *see also id.* ¶¶ 14, 17, 65, 74. They double down on this request in their brief, stating that they seek "the difference between the value of the in-person education they and the University agreed to and the online education they received." Opp. 37; *see also id.* at 31 (stating that Plaintiffs "seek a prorated refund based on the difference between tuition for on-campus and online courses"). Providing that relief would require the Court (or a jury) to evaluate the quality and value of the remote classes Georgetown provided during the pandemic and to assign them a dollar value. This computation directly implicates the "'inherent uncertainties' about the cause and nature of damages" that motivate judicial noninterference in these kinds of disputes. *Brantley v. Dist. of Columbia*, 640 A.2d 181, 184 (D.C. 1994). And this inquiry is unavoidable: The Court cannot determine damages without making the inquiry, and damages are a core element of Plaintiffs' claim.[8]

Plaintiffs cite "eight cases where," they claim, "these arguments have been advanced and fully adjudicated" and then rejected. Opp. 24-25. But they misinterpret these cases. In four Ohio state-court cases, universities argued that plaintiffs' contract or unjust enrichment claims were actually disguised "educational malpractice" tort claims not cognizable under Ohio law, but

---

[8]    Plaintiffs attempt to avoid the implication of the relief they seek by arguing that the quality of the education provided by Georgetown is "but one stick in the bundle" of what they contracted for. Opp. 24. This argument does not help them. Even if the Court accepted that there was a contract to provide the various appurtenant benefits that Plaintiffs claim—a notion wholly unsupported by the terms of Georgetown's actual agreements—it still could not calculate damages without evaluating what portion of Plaintiffs' tuition was attributable to instruction and what portion was attributable to these other benefits. Such an evaluation would still require the Court to quantify Plaintiffs' education in a way settled law discourages.

the state courts declined to "recast[]" the pleadings in this way.  *Cross v. Univ. of Toledo*, 2020 WL 4726814, at *3 (Ohio Ct. Cl. July 8, 2020); *Waitt v. Kent St. Univ.*, 2020 WL 5894543, at *2 (Ohio Ct. Cl. Sept. 28, 2020); *McDermott v. The Ohio St. Univ.*, 2020 WL 5239892, at *2 (Ohio Ct. Cl. Aug. 24, 2020); *Smith v. The Ohio St. Univ.*, No. 2020-00321JD, at *3 (Ohio Ct. Cl. Sept. 9, 2020) (filed in this matter at Dkt. 21-8).  Georgetown does not argue that Plaintiffs' claims should be or need to be recharacterized; the noninterference doctrine applies to Plaintiffs' claims as stated.  *See, e.g.*, *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) ("As several courts have noted, the policy concerns that preclude a cause of action for educational malpractice apply with equal force to bar a breach of contract claim attacking the general quality of an education.").  And the Ohio cases do not consider that doctrine at all.  In the two Michigan cases that Plaintiffs cite, the court held that *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985)—which references the "restrained judicial review of the substance of academic decisions," *id.* at 225—did not require dismissal of contract or unjust enrichment claims. *Milanov v. Univ. of Mich.*, 2020 Mich. Ct. Cl. LEXIS 1, at *7-9 (Mich. Ct. Cl. Jul. 27, 2020); *Garland v. W. Mich. Univ.*, 2020 Mich. Ct. Cl. LEXIS 7, at *9-10 (Mich. Ct. Cl. Sept. 15, 2020). Georgetown does not rely on *Ewing*, but rather on D.C. law setting clear rules for what claims are outside courts' purview, grounded in the *practical* consequences of hearing claims sounding in the quality or value of a university education.[9]  The seventh state-court case that Plaintiffs cite, from Indiana, offered no explanation or reasoning whatever for denying a university's motion to

---

[9]      It is also worth noting that the district court in *Ewing* had "explicitly 'reject[ed] the contract and promissory estoppel claims, finding no sufficient evidence to conclude that the defendants bound themselves either expressly or by a course of conduct to give Ewing a second chance to take'" a particular exam, and the Supreme Court "accept[ed] [this] reasonable rendering of state law."  474 U.S. at 223-24 (quoting *Ewing v. Board of Regents of Univ. of Mich.*, 559 F. Supp. 791, 800 (E.D. Mich. 1983)).

dismiss.  *Mellowitz v. Ball St. Univ.*, 2020 Ind. Super. LEXIS 854, at *1 (Ind. Super. Ct. Aug. 14, 2020).

Finally, in *Salerno v. Florida Southern College*, the court acknowledged that "it is not a court's place to opine" on the "quality of the College's education," and the plaintiff "admit[ted] … that her claim is not about the College's *decision* to move to online learning."  2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (emphasis in original).  The court concluded that "this case is not about the quality of the College's education,"  but only because, in the court's view, the plaintiff stated a claim for breach of contract under Florida law by alleging that the university "*implied* that courses would be conducted in-person," albeit in a "*nebulous*" way, even though no "express document … delineated terms that a plaintiff can reference."  *Id.* at *5 (emphases added).

Here, however, governing D.C. law requires more:  A student must show (1) an alleged obligation "so definite in its terms" that "the promises and performances to be rendered by each party are reasonably certain," (2) an indication that shows that "the University intended to bind itself," and (3) language that does more than merely "express[] an expectancy."  *Basch*, 370 A.2d at 1367-68.  Apart from that, Plaintiffs' complaint challenges Georgetown's decision not to issue tuition and fee refunds.  But this challenge necessarily implicates and involves Georgetown's underlying judgment that the value of the instruction it continued to provide during the pandemic did not warrant such a refund.  *See* Compl. ¶ 35 ("Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.").  Since nebulously implying that in-person instruction was expected does not establish a contractual promise under D.C. law, and since Plaintiffs here do challenge

15

Georgetown's judgment, *Salerno*'s reasons for avoiding the doctrine of judicial noninterference do not apply.[10]

For all of the reasons above, Plaintiffs' contract claims should be dismissed.

## II.   PLAINTIFFS' OTHER CAUSES OF ACTION ALSO SHOULD BE DISMISSED

### A.   Plaintiffs Fail To State A Claim For Unjust Enrichment

Plaintiffs' claims for unjust enrichment should be dismissed as well.  Plaintiffs do not show why these claims may proceed given the parties' contract.  While they contend that they may plead this claim in the alternative, Opp. 27-30, alternative pleading allows for the possibility that an alleged contract may be found not to exist.  Here there is no such possibility—as Georgetown has shown, D.C. law is clear that "that the relationship between a university and its students is contractual in nature" and that "the terms set down in a university's bulletin become a part of that contract." *Basch*, 370 A.2d at 1366.  Under settled law, there *is* a contract in this matter covering tuition and fees—it simply does not say what Plaintiffs want it to say.  MTD 11-13, 18.  This is illustrated by the statements in the Bulletin and Handbook that condition students' responsibility for payment of tuition and fees on their registration for classes.  MTD 13; *supra* at 9.  Courts hearing similar cases against other universities have held that contracts with functionally identical language defeated claims for unjust enrichment, even at the pleading stage. *Chong*, 2020 WL 5847626, at *5; *Zwiker*, 2020 Mich. Ct. Cl. LEXIS 2, at *16-17; *Horrigan*, 2020 Mich. Ct. Cl. LEXIS 4, at *15.

---

[10]     Plaintiffs filed a notice of supplemental authority concerning *Rosado v. Barry University Inc.*, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020).  Addressing the contract claim of the plaintiff in that case, the *Rosado* court found itself "persuaded by *Salerno* and accordingly concludes that [the plaintiff's] allegations … are sufficient to establish, at minimum, an implied contract." *Id.* at *3.  But, because *Salerno* relied on Florida law that does not satisfy the standard set by D.C. law for student-university contracts, and *Rosado* merely relied on *Salerno*, *Rosado* should not persuade the Court either.

Nor can Plaintiffs justify their unjust enrichment claims with hypothetical defenses that they imagine Georgetown might raise to their breach of contract claims.  Opp. 28-29.  For this point, they cite *Falconi-Sachs v. LPF Senate Square, LLC*, which states that the bar on unjust enrichment in the face of a contract does not exist when "[a]pplied to … such circumstance[s]" as contract invalidity, avoidance, or inefficacy, though *Falconi-Sachs* makes equally clear that these situations arise "at the margins."  142 A.3d 550, 556 (D.C. 2016).  But the plaintiff there had pled that the late fee provision at issue was illegitimate under common law.  Here, everyone agrees that a legitimate, enforceable contract exists; it simply does not impose the obligation that Plaintiffs claim it does.[11]

Plaintiffs' unjust enrichment claims fare no better on the merits.  Plaintiffs focus their argument on distinguishing *Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174 (E.D. La. Nov. 26, 2007), which is only one case Georgetown cited in its motion to dismiss, but they misrepresent the basis for the holding in that case.  While Plaintiffs contend that the students in *Roe* were given the "option" to attend other universities when their law school was damaged by Hurricane Katrina, Opp. 31, the court there did not base its decision on the existence of that option.  Rather, it emphasized the benefit that the plaintiff had actually received, in the form of academic credit and his degree.  *Roe v*, 2007 WL 4219174, at *3.  Other cases addressing unjust enrichment claims against universities have taken the same approach.  *Moss v. Wayne State Univ.*, 2009 WL 4344193, at *2 (Mich. Ct. App. Dec. 1, 2009) (addressing uses of contingency fee paid by students, rather than whether students had the option to pay the contingency fee); *Krebs v. Charlotte Sch. of Law, LLC*, 2017 WL 3880667, at *1, 6 (W.D.N.C. Sept. 5, 2017)

---

[11]     Plaintiffs also again argue that the contract is illusory, Opp. 29-30, but for the reasons discussed above, that argument is simply wrong, *see supra* at 10-11.

(focusing on benefits to students, rather than on whether students had option to withdraw after ABA put law school on probation in November 2006). So too with other D.C. cases that Georgetown cited that address benefits that plaintiffs received from defendants. *See Roebling v. Dillon*, 288 F.2d 386, 387 (D.C. Cir. 1961); *cf. Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 885 F. Supp. 2d 156, 188-89 (D.D.C. 2012). Plaintiffs received remote instruction, got credit for it, and stayed on track to graduate on the schedule they intended (with Plaintiff Crawford receiving her degree in the spring, as she had anticipated). This is enough to demonstrate that Georgetown's retention of tuition payments was not unjust. *See* MTD 18-19.

Failing in that line of argument, Plaintiffs resort to arguing that Georgetown's retention of tuition and fees is inequitable because the University has more financial resources than individual families.[12] Opp. 31-32. That is not the test either. The question for unjust enrichment is whether the benefit Plaintiffs conferred on Georgetown (in the form of tuition and fees) is used to benefit Plaintiffs themselves. Plaintiffs do not (and cannot) dispute that it was. That being the case, they cannot state a claim for unjust enrichment.

---

[12] As part of this argument, Plaintiffs contend that Georgetown "saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, etc." Opp. 31. These allegations do not appear in the complaint and thus cannot be considered here. *See, e.g.*, *King v. Triser Salons, LLC*, 815 F. Supp. 2d 328, 332 (D.D.C. 2011) ("Although plaintiff's opposition to the motion to dismiss proffers additional facts, the Court may only consider the facts set forth in the complaint when evaluating a motion to dismiss."). In any event, this claim is flatly untrue. Georgetown's efforts to respond to the coronavirus pandemic and to shift instruction online "required approximately $25 million in immediate unbudgeted spending" in the first month of the pandemic alone and resulted in "an operating loss of at least $50 million" in the leadup to the Fall 2020 semester. Letter from John J. DeGioia, *Update on Our Financial Response to COVID-19 – May 2020* (May 12, 2020), *available at* https://president.georgetown.edu/financial-response-to-covid-19-may-2020/.

**B.     Plaintiffs Fail To State A Claim For Money Had And Received**

Georgetown and Plaintiffs agree that, under D.C. law, Plaintiffs' claim for money had and received rises or falls with their claim for unjust enrichment.  MTD 19-20; Opp. 32. Because Plaintiffs' unjust enrichment claim fails, so does their claim for money had and received.

**C.     Plaintiffs Fail To State A Claim For Conversion**

Plaintiffs' arguments with respect to their conversion claim also fail, and that claim should be dismissed.

*First*, Plaintiffs claim that they have "identified the specific sums of money that were converted, namely the tuition and fees they paid for the Spring 2020 semester." Opp. 33.  But they cannot plausibly argue that they are entitled to the return of their *whole* payments in light of the instruction and academic credit they received.[13]  Rather, the funds Plaintiffs say have been converted are the unspecified "difference between the value of the in-person education they and the University agreed to and the online education they received." *Id.* at 37.  A claim for the return of some "unidentified portion of a larger pool of funds"—or, here, an unidentified portion of a larger payment—does not support a claim for conversion. *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 31 (D.D.C. 2014).

---

[13]     Indeed, elsewhere in their brief, Plaintiffs say that they are "not seeking a tuition-free semester," Opp. 31, which is exactly the relief they *would* be seeking if the entire amount of their tuition and fee payments were at issue in their conversion claim.  This also demonstrates why Plaintiffs' reliance on *Rwanda v. Rwanda Working Group*, 227 F. Supp. 2d 45 (D.D.C. 2002), to demonstrate the specificity of the amount they claim is inapposite:  There, the amount that had been converted was the *entire* amount of the plaintiff's payments that were in the hands of the defendant, since the court found that "these monies were never used in a way that would benefit the" plaintiff. *Id.* at 63.

*Second*, Plaintiffs fail to show how they can pursue their conversion claim in the face of the parties' contract.  While they say the conversion claim "is not predicated merely on their rights under their contract with the University," Opp. 35, it is difficult to see what else aside from an alleged contract underlies their claim.  The only reason Georgetown's retention of Plaintiffs' tuition and fee payments is purportedly wrongful is that Georgetown purportedly failed to fulfill a contractual obligation.  Plaintiffs offer no additional explanation as to why the retention of their tuition and fee payments is in derogation of their rights—and indeed, in making a separate argument on the conversion claim, demonstrate their clear reliance on the alleged terms of the contract itself.  *See id.* at 36 ("The University diverted Plaintiffs' tuition and fees away from the *bargained-for* in-person learning and activities to online learning." (emphasis added)).  That is a contract claim, not one for conversion.  *See Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 n.13 (D.C. 2008); *McNamara v. Picken*, 950 F. Supp. 2d 193, 195 (D.D.C. 2013).[14] Nor can Plaintiffs plead this claim in the alternative—as with their unjust enrichment claim, *supra* at 16, the law is clear that the parties' relationship is contractual, and so there is no alternative scenario to plead.  Plaintiffs are wrong that Georgetown "denies the very existence of

---

[14]     The cases Plaintiffs rely on do not support their position.  In *Rwanda*, there was no valid contract between the plaintiff and the defendant against whom the conversion claim was filed; one of the two contracts in question was between the plaintiff and an association of which the individual conversion defendant was a member, while the signatory for the plaintiff to the other contract did not have authority to bind the plaintiff to that contract or to use the plaintiff's funds.  227 F. Supp. 2d at 53, 60, 66-68.  In *Sloan v. Urban Title Services*, the court found that the conversion claim went beyond the bounds of a contract claim because it also relied on the defendant's allegedly fraudulent conduct in establishing the contractual relationship in the first place; it noted that in a situation like the one at bar where the plaintiff "merely allege[d] that she paid [defendant] certain monies and that she is 'now due a return of that money,'" a conversion claim may indeed be impermissible in light of the parties' contract.  2011 U.S. Dist. LEXIS 31225, at *26 (D.D.C. Mar. 27, 2011).  Finally, the conversion at issue in *Sabre International Security v. Torres Advanced Enterprise Solutions, LLC*—the defendant's sale of tangible property it had leased from the plaintiff—was a wrong independent from the breach of the defendant's obligations under the lease contract.  13 F. Supp. 3d 62, 71-72 & n.8 (D.D.C. 2014).

a contractual obligation to Plaintiffs." Opp. 36. As Georgetown has made clear, there *is* a contract between the parties concerning tuition and fee payments (*i.e.*, the property underlying the conversion claim), but it does not impose the particular obligation Plaintiffs want.

*Third*, Plaintiffs' argument that Georgetown used their tuition and fee payments in derogation of Plaintiffs' rights relies on a misunderstanding of what was promised. Plaintiffs point to Georgetown's marketing and related materials for the notion that tuition was paid in exchange for a promise of in-person instruction, Opp. 36, but as Georgetown has shown, no such promise was made, *supra* at 2-6; MTD 6-11. Similarly, while Plaintiffs claim that "the mandatory fees paid by Plaintiffs and their classmates were specifically intended to pay for on-campus activities, intra-campus transportation, and access to campus facilities and equipment," Opp. 36, the actual description of the only fee discussed in Plaintiffs' complaint is far too amorphous to give rise to any specific obligation on Georgetown's part, *supra* at 4-5; MTD 9. Absent a showing of a promise to provide exclusively in-person instruction and services, Plaintiffs cannot show that Georgetown's retention of their tuition and fee payments was in derogation of any of their rights.

*Finally*, for the reasons discussed above, *supra* at 11-13, Plaintiffs' conversion claim is subject to dismissal under the rules mandating judicial noninterference in academic disputes. As with the contract claim, Plaintiffs' conversion claim for the "difference between the value of the in-person education they and the University agreed to and the online education they received," Opp. 37, would require the Court to make inquiries not suited to judicial determination.

## CONCLUSION

For these reasons, Plaintiffs' complaint should be dismissed in its entirety with prejudice.

Dated: November 23, 2020

Respectfully submitted,

_/s/ Jamie S. Gorelick_
Jamie S. Gorelick (#913384)
Bruce M. Berman (#333948)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6006
jamie.gorelick@wilmerhale.com
bruce.berman@wilmerhale.com
danielle.conley@wilmerhale.com

Alan E. Schoenfeld (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 937-7294
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendant The President and
Directors of Georgetown College*